UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

PATRICK EDWARD FREDERICKS,

              Petitioner,

v.

ROBERT NAPEL,

              Respondent.

_____/

Case No. 2:17-cv-28

Honorable Janet T. Neff

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a former state prisoner under 28 U.S.C. § 2254. Petitioner Patrick Edward Fredericks is presently on parole. At the time he filed his petition, however, he was incarcerated with the Michigan Department of Corrections at the Marquette Branch Prison (MBP) in Marquette, Michigan. Following a jury trial in the Kalamazoo County Circuit Court, Petitioner was convicted of operating or maintaining a methamphetamine laboratory, Mich. Comp. Laws § 333.7401c(1)(a). On April 28, 2014, the court sentenced Petitioner as a habitual offender-fourth offense to a prison term of 4 years, 3 months to 20 years.

On February 3, 2017, Petitioner timely filed his habeas corpus petition.

The petition raises fourteen grounds for relief, as follows:

I.      In violation of 6th Amendment rights [and the ] 4th Amendment, the trial court's ruling denying [Petitioner's] motion for new trial and a *Ginther* hearing regarding ineffective assistance of counsel mandates reversal because the decision was against the great weight of the evidence and it was an abuse of discretion and the court made a clear legal error on the issue.

II.     Violation of 6th Amendment rights. Appellate counsel was ineffective on appeal by failing to investigate and raise clearly meritorious issues and [by] losing [Petitioner's] chance on direct appeal.

III.     Prosecution use of testimony not supported by evidence by main witness [Deputy] Rodney Rought['s] violating [Petitioner's] due process rights.

IV.     False evidence of a meth pipe and meth watch logs were used to obtain a search warrant violating [Petitioner's] 4th Amendment rights.

V.     In violation of 14th Amendment due process, prosecutor engaged in prosecutorial misconduct by allowing its main witness [Deputy] Rought to commit perjury and false testimony and failed to correct it.

VI.     Prosecutor denied [Petitioner's] Fourteenth Amendment rights to due process by denying right to a fair trial, impartial jury, and shifting burden of proof.

VII.     Ineffective assistance of counsel as guaranteed by the Sixth Amendment when trial counsel failed to investigate.

VIII.     Prosecutor violated [Petitioner's] rights to due process by committing fraud on the court when it introduced fabricated evidence and false testimony.

IX.     The evidence presented to the jury was not constitutionally sufficient to [support] a jury verdict of guilty.

X.     Affidavit for search warrant was unconstitutionally vague [such] that it violated [Petitioner's] right under [the] 4th Amendment.

XI.     4th Amendment-Officers entered home without consent, seized [Petitioner], interrogated him, and searched [Petitioner] for 1-½ hours then removed him from home and locked [Petitioner] in [police vehicle].

XII.     Jury instructions did not meet elements of crime violating [Petitioner's] due process [rights].

XIII.     Prosecution violated [Petitioner's] due process rights by failing to turn over evidence favorable to [Petitioner's] defense.

XIV.     Prosecution suppressed evidence favorable to [Petitioner's defense] and [used] perjur[ed] or false testimony denying 14th Amendment right to fair trial.

(Pet'r's Supp. I, ECF No. 4, PageID.28-47.)

       The initial petition (ECF No. 1) was not prepared on the court-approved form.

Petitioner filed a supplement on February 22, 2017, on the approved form. (ECF No. 4.) The

supplement identifies the fourteen habeas issues set forth above. Petitioner has filed additional

"supplements" as this matter has proceeded.  (ECF Nos. 6, 8, 19, 27, and 29.)  For the most part, the supplements provide additional support for the issues Petitioner raised in his first supplement. The supplement Petitioner filed on April 19, 2017, (ECF No. 8), however raises a new issue:

> XV.  The state statute Petitioner was convicted of violating is unconstitutionally vague.

(Supp. III, ECF No. 8, PageID.204.)

Respondent has filed an answer to the petition (ECF No. 23) stating that the grounds should be denied because they are meritless or procedurally defaulted.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless or procedurally defaulted.  Accordingly, I recommend that the petition be denied.

**Discussion**

I.    Factual allegations

During the mid-morning hours of May 25, 2013, Ms. Kelly Main, of 9045 Douglas Avenue, Kalamazoo, Michigan, heard "a loud bang—like an explosion." (Trial Tr. I, ECF No. 24-4, PageID.548.)  She believed the sound originated in the other half of her duplex building, from 9035 Douglas Avenue, where Petitioner resided.  (*Id*., PageID.547-548.)  She called 911.  (*Id*.)

State trooper Dan Lewis responded to the call.  (*Id*., PageID.564-565.)  He was informed that just a couple of days before, the Kalamazoo County Sheriff's Department had responded to the same address because a resident there had attempted suicide.  (*Id*.)  He arrived about ten minutes after he was dispatched.  (*Id*.)

Petitioner's side of the duplex was closed up tight.  The curtains were drawn tight; it was not possible to see inside.  (*Id*., PageID.566.)  Trooper Lewis knocked but, initially, no one came to the door.  (*Id*.)  Eventually, Petitioner emerged.

Trooper Lewis described Petitioner as sweaty and jittery; he noticed that Petitioner had what appeared to be burns on his face. (*Id*., PageID.568-570.) Trooper Lewis, in light of the recent suicide attempt at that location, asked for and was granted permission to look inside the house. (*Id*.) Trooper Lewis and two sheriff's department deputies—they had arrived before Petitioner opened the door—entered the house. (*Id*.)

Kalamazoo County Sheriff's Department Deputy Rodney Rought arrived to back up Trooper Lewis. (*Id*., PageID.585-586.) Deputy Rought also took note of Petitioner's nervous behavior and facial injuries. (*Id*., PageID.588-592.) He performed a pat-down search of Petitioner. (*Id*., PageID.592.) He found a makeshift methamphetamine pipe in Petitioner's pocket. (*Id*.)

Based on Petitioner's behavior, the loud bang, the facial burns, and the meth pipe, Deputy Rought decided to obtain a search warrant. (*Id*., PageID.597-598.) Before preparing the affidavit, Rought checked "METH watch," a log of Sudafed purchases. (*Id*., PageID.598.) He discovered Petitioner routinely bought 2 or 3 boxes of Sudafed a month. (*Id*.) Rought prepared the affidavit and procured the search warrant. (*Id*., PageID.601-602.)

During the hour or two that it took Deputy Rought to secure the warrant, Trooper Lewis and another deputy kept an eye on Petitioner's house. (*Id*., PageID.602.) They kept Petitioner out of the house, but told him that he was otherwise free to leave. (*Id*.) He left before Deputy Rought returned. (*Id*.)

Pursuant to the warrant, the law enforcement officers searched Petitioner's home and vehicle. In the house, they discovered several items that were typically used to manufacture methamphetamine. They found additional items typically used to manufacture methamphetamine in a garbage bag in the back of Petitioner's vehicle.

Petitioner testified that there were perfectly innocent explanations for everything in the house.  (Trial Tr. II, ECF No. 24-5, PageID.718-764.)  He testified further that the materials found in his vehicle were not his.  (*Id.*)  He suggested that they belonged to a houseguest and coworker who had recently used Petitioner's vehicle.  (*Id.*)

After Petitioner testified, both parties rested and then presented their closing arguments.  The court's instructions to the jury included the following:

> The defendant is charged with the crime of illegally operating or maintaining a methamphetamine laboratory.  To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt.
>
> First, that the defendant owned, possessed, or used a vehicle, building, structure or chemical laboratory equipment.
>
> Second, that . . . the defendant knew, or had reason to know that the vehicle, building, structure, or equipment was to be used to manufacture methamphetamine.

(*Id.*, PageID.821.)

The jury deliberated for less than two hours before it returned its verdict finding Petitioner guilty of the crime as charged.  (*Id.*, PageID.828-831.)

Before the trial, Petitioner's counsel moved to exclude all of the evidence obtained upon execution of the search warrant because the supporting affidavit was false.  The trial court reviewed each claimed falsehood and concluded that, in fact, Petitioner had failed to demonstrate that any of the statements were false.  (Mot. to Suppress Hr'g Tr., ECF No. 24-3, PageID.422-427.)

Despite Petitioner's counsel's efforts to suppress the search warrant evidence, in a post-trial motion, Petitioner claimed his counsel was ineffective for failing to seek suppression of the evidence under the Fourth Amendment.  (Mot. for New Trial Hr'g Tr., ECF No. 24-6.)  He raised other issues as well: counsel's failure to subpoena and call other witnesses; counsel's failure to challenge the participation of the Kalamazoo County Prosecutor's Office because the elected

prosecutor had previously represented Petitioner; counsel's failure to introduce testimony that Petitioner's facial injuries were a product of MRSA, not burns; counsel's failure to introduce Petitioner's computer logs to demonstrate that he was not rushing around cleaning up a meth explosion when police arrived, he was working on his computer; counsel's failure to challenge the pat-down search; counsel's failure to challenge the introduction of Petitioner's statements when he was in custody, but not advised of the *Miranda* warnings; counsel's failure to challenge through cross-examination Deputy Rought's hopelessly inconsistent testimony; and counsel's failure to challenge the destruction of evidence.  (*Id.*, PageID.836-843.)  The trial court concluded Petitioner had failed to demonstrate that counsel's performance was unreasonable or that he had suffered any prejudice as a result.  (*Id.*, PageID.845-850.)

Petitioner raised his Fourth Amendment challenges again before sentencing. (Sentencing Tr., ECF No. 24-7, PageID.854.)  At the beginning of Petitioner's sentencing hearing, the court construed Petitioner's restated challenge as a motion for reconsideration of the court's prior order denying Petitioner's motion to suppress.  (*Id.*)  The court then denied the motion and sentenced Petitioner as described above.  (*Id.*, PageID.854-855, 875.)

Petitioner, with the assistance of the same counsel who had filed the motion for new trial, directly appealed his convictions to the Michigan Court of Appeals.  Petitioner's brief mirrored the motion for new trial, but it purported to raise only one issue, the same issue identified as Issue I in this petition:  the multi-faceted claim that trial counsel rendered ineffective assistance. (Pet'r's Appeal Br., ECF No. 24-8.)  Although only one issue was stated, Petitioner also clearly argued that the trial court should have suppressed the evidence obtained upon execution of the search warrant.  (*Id.*)  The court of appeals considered and rejected all of issues argued in Petitioner's brief.  (Mich. Ct. App. Op., ECF No. 24-8, PageID.878-887.)

Petitioner, again with the assistance of counsel, then sought leave to appeal in the Michigan Supreme Court.  Petitioner raised the same issues in the supreme court that he raised in the court of appeals.  (Pet'r's Appl. for Leave to Appeal, ECF No. 24-9, PageID.961-1015.) Petitioner also sought a peremptory remand for a *Ginther* hearing.[1]  (Pet'r's Mot. for Peremptory Rem., ECF No. 24-9, PageID.1019-1028.)   The Michigan Supreme Court denied Petitioner's application, as well as his motion, by order entered February 2, 2016.

A few weeks later, Petitioner returned to the trial court and filed a *pro per* motion for relief from judgment raising several issues, including the issues identified as issues II-XIV above.  (Mot. for Relief from J., ECF No. 24-10.)  The trial court concluded that one of Petitioner's motion issues had already been raised on his direct appeal and denied.  The court concluded that, under Mich. Ct. R. 6.508(D)(2), it could not grant relief on any issues previously raised and denied. The court determined that Petitioner's remaining issues could have been raised on direct appeal, but were not, and Petitioner had not demonstrated cause for that failure.  Therefore, the court concluded, under Mich. Ct. R. 6.508(D)(3), it could not grant relief on those issues.  Accordingly, the court denied Petitioner's motion.

Petitioner sought leave to appeal the trial court's decision in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders entered January 5, 2017, and April 4, 2017.  (Mich. Ct. App. Order, ECF No. 24-13, PageID.1139; Mich. Order, ECF No. 24-14, PageID.1268.)   Petitioner filed his initial petition after the court of appeals decision, but before the supreme court decision.  Thus, when he filed his petition, he was still pursuing relief in the state courts.  When the supreme court entered its April 4, 2017, order,

---

[1] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record.

Petitioner exhausted his state court remedies with respect to Habeas Issues II-XIV.  He has never raised Habeas Issue XV in the state courts.

      II.    <u>AEDPA standard</u>

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court

precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Exhaustion and Procedural Default (Habeas Issue XV)

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*,

526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.

The district court can and must raise the exhaustion issue *sua sponte*, when it clearly appears that habeas claims have not been presented to the state courts.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138-39 (6th Cir. 1970).  "[A] state may not be considered to have waived the defense of nonexhaustion unless it does so expressly and through counsel."  *Rockwell v. Yukins*, 217 F.3d 421, 423-24 (6th Cir. 2000).

Petitioner bears the burden of showing exhaustion.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  With respect to Habeas Issues I-XIV, there is no question Petitioner has exhausted his state court remedies.  He has raised each issue to all levels of the Michigan court system; he has presented at least one issue to each level of the Michigan court system twice.  Habeas Issue XV, however, has never been raised in the state trial court, court of appeals, or supreme court.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented.  28 U.S.C. § 2254(c).  The

failure to exhaust is only a barrier to relief, however, if there is a state court remedy available for petitioner to pursue, thus providing the state courts with an opportunity to cure any constitutional infirmities in the state court conviction. *Rust*, 17 F.3d at 160.  If no further state remedy is available to the petitioner, exhaustion does not present a problem, but the claim is procedurally defaulted and the federal court must determine whether cause and prejudice exist to excuse the failure to present the claim in state court. *Id.*

Under Michigan law effective August 1, 1995, a defendant may file one motion for relief from judgment under Michigan Court Rule 6.500 *et. seq*.  *See* Mich. Ct. R. 6.502(G)(1).  Petitioner already has filed his one allotted motion.  He therefore has no available remedy.  At this juncture, the court must consider whether there is cause and prejudice to excuse Petitioner's failure to present the claims in state court.  *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Rust*, 17 F.3d at 160.

To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991).  A petitioner who fails to demonstrate cause and prejudice cannot have a cognizable claim.  *Gray*, 518 U.S. at 162.  Further, where a petitioner fails to show cause, the court need not consider whether he has established prejudice.  *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

Petitioner offers no cause for his failure to challenge the constitutionality of the statute in the state courts.  Even if he might blame his appellate counsel for failing to raise it on direct appeal, the failure to raise the issue in his first motion for relief from judgment is attributable solely to Petitioner.

11

Alternatively, Petitioner may avoid the procedural default bar to habeas review if he can show that a lack of federal habeas review of the claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray*, 477 U.S. at 495; *Hicks v. Straub*, 377 F.3d 538, 551-52 (6th Cir. 2004).  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner offers some evidence that was never presented to the jury in his trial: a post-decontamination report for 9035 Douglas Avenue; Petitioner's medical records relating to the "burns" on his face; communications between Petitioner and his appellate counsel regarding the purported non-existence of "Meth Watch"; and a statement detailing Petitioner's time on the computer the morning of the "explosion" for the purpose of refuting the deputy's suggestion that Petitioner may have been rushing around cleaning up after the incident instead of immediately opening the door.  (Pet'r's Supp. III, ECF Nos. 4-6, 4-8, 4-9, 4-10, PageID.157-179.)   That evidence, however, is not new—it existed at the time of Petitioner's trial.[2]  The evidence also fails to demonstrate Petitioner's innocence.

Petitioner claims the post-decontamination report would have supported his defense.  The report discloses that there was no evidence of methamphetamine at 9035 Douglas Avenue.  (Pet'r's Supp. III, ECF No. 4-9, PageID.173-174.)  The report was generated, however,

---

[2] The communications between Petitioner and his appellate counsel did not exist at the time of Petitioner's trial; however, as set forth fully below, the information conveyed was available when Petitioner was tried.

only after that address was subjected to a decontaminating cleaning.  (*Id.*)  The report says nothing about the presence of methamphetamine in the duplex on May 25, 2013.

Petitioner's medical record from an emergency room visit a few days after the "explosion" casts doubt on the testimony from the law enforcement witnesses suggesting that Petitioner might have been burned from an explosion.  (Pet'r's Supp. III, ECF No. 4-6, PageID.157.)  But, the reported diagnosis that the running sores were MRSA-related skin infections was not exculpatory.   There is some correlation between MRSA skin infections and methamphetamine use.[3]  Petitioner provides no support for a claim that the medical records demonstrate his innocence.

Petitioner's communications with counsel regarding "Meth Watch" also fail to support any claim that Petitioner is innocent.  (Pet'r's Corr., ECF No. 4-8.)  In Deputy Rought's probable cause affidavit, he noted that he had checked "Meth Watch" to ascertain the quantity of Petitioner's Sudafed purchases.  (Affid. for Search Warrant, ECF No. 4-7, PageID.159.)  Petitioner concluded that Deputy Rought, and the prosecution, lied because law enforcement in Michigan, at that time, used the National Precursor Log Exchange (NPLEx) to check Sudafed purchases.  (Pet'r's JPay Letter, No. 4-8, PageID.169.)  Petitioner claims that "'Meth Watch' is not a sudefed tracking system."  (Pet'r's Br., ECF No. 4-1, PageID.63.)  There is nothing in the record to support Petitioner's claim other than his say-so.  That is not enough.

The logging of pseudoephedrine purchases has evolved as state and federal governments ramped up efforts to stop methamphetamine abuse.  On a federal level, the United States Congress passed the Combat Methamphetamine Epidemic Act of 2005, Pub. L. No. 109-

---

[3] *See, e.g.*, Adam L. Cohen et al., *Methamphetamine Use and Methicillin-Resistant Staphylococcus aureus Skin Infections*, Emerging Infectious Diseases Journal, Vol. 13, No. 11, November, 2007.

177, §§ 701-756.  Under that Act, for the first time, nationally, pseudoephedrine purchasers were required to present government-issued identification and sign a logbook when making retail purchases.  The act also imposed daily and 30-day purchase limits.  The logbooks were accessible to law enforcement.  Michigan had passed similar legislation a few months before the federal legislation.  Mich. Comp. Laws § 333.17766e.

     The logbooks provided some protection, but Michigan's legislators recognized, even at the time they passed the law requiring a hard-copy, purchaser-signed logbook, that a real-time electronic logbook might be a more effective tool:

> Oklahoma legislators just recently passed legislation to create a statewide electronic database that would track purchases of pseudoephedrine. According to news reports, the legislation would target "smurfing"—the practice of going from store to store in order to buy hundreds or thousands of tablets at a time—by allowing pharmacists to check and see if the same person just bought similar products from another pharmacy down the road.  Rather than having only some retailers keep a paper log that only law enforcement personnel might see (and then weeks or months later), measures should be explored to see if there is an easy or cost-efficient way to implement something similar for Michigan retailers so that meth manufacturers can be caught in the act, so to speak, of gathering enough cold tablets for a cooking session.

Legislative Analysis, House Fiscal Agency, HB 4322 & SB 189 as enrolled, p. 9, available at http://www.legislature.mi.gov/documents/2005-2006/billanalysis/House/pdf/2005-HLA-4322-6.pdf (last visited Feb. 9, 2019).

     That part of Michigan's efforts directed at retailers proceeded under the program banner of Michigan Meth Watch.  *See, e.g.*, *Retailers to Keep Eye Out for Cookers*, available at https://www.michigan.gov/documents/drugteam-INSIDE_PANWLA_22SEP_129636_7.pdf (last visited Feb. 7, 2019).  The "Meth Watch" program generally, however, was a creation of the Consumer Healthcare Products Association (CHPA), an organization representing manufacturers

and marketers of over-the-counter medicines, like Sudafed.[4]   Ultimately, however, the CHPA "Meth Watch" program and "Michigan Meth Watch" have faded as real-time electronic logbooks have become the standard.

Michigan shifted from the hard-copy logbook to an electronic logbook with the July 2011 enactment of Mich. Comp. Laws § 333.7340a.   That statute requires pseudoephedrine retailers to log sales through NPLEx.   NPLEx is sponsored by the CHPA.  *May v. Strain*, No. 13-176, 2014 WL 2003100 (E.D. La. May 14, 2014).   NPLEx is provided by the National Association of Drug Diversion Investigators (NADDI).[5]   Appriss Inc. is the technology vendor that won the competitive bidding process to implement the service using Appriss's product, MethCheck.  *Id.*

If Deputy Rought used a computer on May 25, 2013, to check for pseudoephedrine sales to Petitioner, he undoubtedly used the NPLEx system to do it.   Nonetheless, the fact that Deputy Rought called the source of his Sudafed purchase information "Meth Watch" instead of "NPLEx" does not, as Petitioner suggests, reveal some nefarious deception.  It is far more likely Rought's reference to the log as "Meth Watch" is simply outdated.   Even if that is not the case, Petitioner has failed to demonstrate the Rought's affidavit statement, or subsequent trial testimony, is false.   Indeed, whatever Deputy Rought called the program in his affidavit, Petitioner did not deny he purchased the pills containing pseudoephedrine.  (Trial Tr. II, ECF No. 24-5, PageID.762-764.)

Petitioner's log of his own computer activity also fails to exculpate him.   The log cuts off at about the time law enforcement personnel arrived.  (Pet'r's Supp. III, ECF No. 4-10,

---

[4] *See* Government Officials, Law Enforcement, and Retail Representatives from 18 States Attend Leadership Training Session for National Meth Watch Program, CHPA Press Release, Jul. 8, 2004 (available at https://www.chpa.org/07_08_04_LeadershipTrainingMethWatch.aspx (last visited Feb. 9, 2019)).

[5] *See* Patricia R. Freeman et al., *Impact of State Laws Regulating Pseudoephedrine on Methamphetamine Production and Abuse: A White Paper of the National Association of State Controlled Substance Authorities*, Apr. 18, 2016 (available at http://www.nascsa.org/PDF/psedoephedrineWhitepaper4.18.16.pdf (last visited Feb. 9, 2019)).

PageID.179.)  It is after their arrival that the officers testified an unusually long period passed before Petitioner emerged.

Put simply, none of the "new" evidence Petitioner offers demonstrates his innocence.  Moreover, none of the "new" evidence is relevant to Petitioner's procedurally defaulted claim: that the statute under which he was convicted is unconstitutionally vague. Accordingly, Petitioner remains subject to the procedural default bar and he is not entitled to relief on Habeas Issue XV.

## IV. Other Procedural Defaults (Habeas Issues III-X and XII-XIV)

Respondent argues that habeas relief is barred with respect to Petitioners' Habeas Issues II-XIV as well.  Respondent contends that the trial court refused to consider Petitioner's "motion for relief from judgement" issues under Mich. Ct. R. 6.508(D)(3) because Petitioner had failed to raise them on direct appeal and had not established cause for that failure.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle*, 456 U.S. at 107.  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks,* 377 F.3d at 551; *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501

U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  For Petitioner, the last reasoned decision is the July 27, 2016, trial court opinion and order denying his motion or relief from judgment.  (Kalamazoo Cty. Cir. Ct. Order, ECF No. 24-11, PageID.1116-1134.)

In that opinion, the trial court determined it could not grant relief with regard to Habeas Issue XI, regarding the law enforcement officers pre-search warrant conduct, because the issue had been raised on Petitioner's initial appeal and decided against him.  Michigan Court Rule 6.508(D)(2) precludes granting relief from judgment under that circumstance.

The trial court concluded it could not grant relief with regard to Habeas Issues III-X and XII-XIV, because the issues had not been raised on Petitioner's initial appeal and Petitioner had failed to demonstrate cause for or resulting prejudice from that failure.[6]  Therefore, the trial court enforced a state procedural rule, Mich. Ct. R. 6.508(D)(3), to bar consideration of Petitioner's Habeas Issues III-X and XII-XIV.

A rule is an adequate and independent ground when it was "firmly established and regularly followed" at the time of the asserted procedural default.  *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).  Mich. Ct. Rule 6.508(D)(3) "was firmly established and regularly followed . . . and was an adequate and independent state ground for denying review."  *Gates v. Hoffner*, No. 17-2198, 2018 WL 1614261, at *2 (6th Cir. Mar. 23, 2018) (citing *Simpson v. Johnson*, 238 F.3d 399, 407 (6th Cir. 2000)).  Because Petitioner procedurally defaulted Habeas Issues III-X and XII-XIV in state court, to raise those issues in this Court, Petitioner must demonstrate cause for his failure to comply with the

---

[6] The trial court was compelled to consider and resolve Petitioner's Habeas Issue II, regarding ineffective assistance of appellate counsel, because Petitioner offered that as cause for his failure to raise the other issues.

state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim.[7]

Petitioner contends that the cause of his procedural defaults is the ineffective assistance provided by his appellate counsel.  (Pet'r's Reply Br., ECF No. 25, PageID.1423-1424.)  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."

---

[7] The undersigned has already concluded that Petitioner has failed to demonstrate the possible alternative exception for a miscarriage of justice.

*Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 688.  As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present."  *Id.*

Applying *Strickland* to determine whether Petitioner's appellate counsel rendered ineffective assistance requires an assessment of the merits of the claims his counsel failed to raise. The U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner . . . ."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Where the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default.  *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).  Because the procedural default analysis with

respect to Habeas Issues III-X and XII-XIV requires analysis of the merits of Petitioner's claims, judicial economy favors simply addressing Petitioner's claims on the merits at the outset.

V.      Fourth Amendment Issues (Habeas Issues IV, X, and XI)

Petitioner's conviction was founded upon the evidence of meth-making supplies and equipment located in Petitioner's home and vehicle.  That evidence was obtained pursuant to a search warrant; the search warrant was issued based upon Deputy Rought's probable cause affidavit.  If Petitioner could successfully challenge the search and exclude that evidence, the prosecutor's case would crumble.

Petitioner presents multiple challenges to the trial court's failure to exclude the evidence.  He contends, as his trial counsel argued before trial, that the probable cause affidavit included false statements regarding the meth pipe and the "Meth Watch" logs (Habeas Issue IV). He contends, as his appellate counsel argued in post-trial motions and on appeal, that law enforcement personnel failed to comply with Fourth Amendment requirements in their conduct preceding the affidavit and warrant, thus invalidating the affidavit and warrant (Habeas Issue XI). Finally, Petitioner contends, as he argued in his motion for relief from judgment, that the affidavit was too vague to support issuance of the warrant (Habeas Issue X).  All of these contentions fit under the broad claim that the searches of his person, home, and vehicle were illegal.

Petitioner's illegal search claims are barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims).  In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has

20

given the petitioner a full and fair opportunity to litigate the claim.  *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

   For the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism.  *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985).  If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error.  *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

   Petitioner cannot satisfy either prong of the *Stone v. Powell* standard.  First, it is beyond dispute that Michigan has a state procedural mechanism that provides a defendant a full opportunity to raise a Fourth Amendment claim before trial.  Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures.  *See People v. Margelis*, 186 N.W. 488 (Mich. 1922).  After *Mapp v. Ohio*, 367 U.S. 643 (1961), Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment.  *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982).  Consequently, Michigan affords criminal defendants a means to raise Fourth Amendment challenges.

   To satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down.  *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim).  The Sixth Circuit pointedly has held that the

doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been an "egregious error." *Gilbert*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts indicating that the state's mechanism has broken down.   Indeed, it is clear that the Michigan courts gave Petitioner's claim full and proper consideration.  Petitioner's trial counsel moved to suppress the evidence in the trial court.  (Cass Cty. Cir. Ct. Docket Sheet, ECF No. 15-1, PageID.172; Mot. Hr'g Tr., ECF 15-8.)  Her motion was denied.   (Mot. Hr'g Tr., ECF No. 15-8, PageID.265.)   The court of appeals addressed Petitioner's Fourth Amendment claims regarding the pre-warrant conduct of the law enforcement personnel and concluded the claims had no merit.  (Mich. Ct. App. Op., ECF No. 15-15, PageID.725-726.)   The Michigan Supreme Court then determined that Petitioner's Fourth Amendment issues were not worthy of further review.   (Mich. Order, ECF No. 15-16, PageID.908.)  The trial court upheld the validity of the warrant again when Petitioner claimed, in his motion for relief from judgment, that the affidavit was too vague.  (Kalamazoo Cty. Cir. Ct. Op. & Order, ECF No. 24-11, PageID.1124-1126.)  The Michigan Court of Appeals and Michigan Supreme Court refused to consider Petitioner's appeal of that decision.   (Mich. Ct. App. Order, ECF No. 24-13, PageID.1139; Mich. Order, ECF No. 24-14, PageID.1268.)

Even if this Court were to disagree with the determinations of the Michigan courts, that disagreement would be insufficient to demonstrate a break-down in the state court's corrective mechanisms. *Gilbert*, 763 F.2d at 824.  Accordingly, because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claims of illegal search and seizure are barred on habeas review.

VI.    Jury Instructions (Habeas Issue XII)

Petitioner claims that the jury instructions did not meet the elements of the crime. Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review.  Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process.  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad*, 675 F.3d at 569 (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner has hit upon the type of instructional failure that calls into question whether he has been afforded due process.  The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).  When a jury is not properly instructed with regard to the elements of the charged crime, the due process right to proof beyond a reasonable doubt is implicated.  *Sandstrom v. Montana*, 442 U.S. 510 (1979).  It is the prerogative of the state, however, to define the elements of the crime and the federal courts are bound by their determination.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses.  Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").

The state court concluded that the instructions given "laid out the specific elements of the crime . . . [and] did not hold the prosecutor to any less burden of proof, nor did the

23

instructions require the prosecutor to not prove all of the elements required [by the statute]." (Kalamazoo Cty. Cir. Ct. Op. & Order, ECF No. 24-11, PageID.1131-1132.)  This Court is bound by the state court's state-law determination that the instructions captured all of the elements of the charged crime.  Because the instructions included all of the necessary elements, the state court's determination that the instruction met the requirements of due process is neither contrary to,  nor an unreasonable application of, clearly established federal law.  Therefore, Petitioner is not entitled to habeas relief on his jury instruction challenge.

VII.    Sufficiency of the Evidence (Habeas Issue IX)

Petitioner claims that the evidence presented to the jury was not constitutionally sufficient to support the verdict of guilty.  In addition to Petitioner's repeated challenges to Deputy Rought's credibility, Petitioner also complains that the prosecutor failed to produce:  (1) physical evidence of the meth pipe; (2) the "Meth Watch" logs; (3) any of the meth-lab items shown to jurors by way of photographs; and (4) evidence regarding the actual liquid content of the purported meth-lab containers.  (Pet'r's Br., ECF No. 4-1, PageID.80-82.)  Petitioner's invitations to question witness credibility and his demands for "physical evidence" are misdirected.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson*, 443 U.S. at 319, which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the

24

conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The trial court resolved Petitioner's sufficiency challenge as follows:

> The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 US 358, 364 (1970). The relevant question is, after viewing the evidence in the light most favorable to the prosecution, "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Hardiman*, 466 Mich 417, 421 (2002). It is for the trier of fact, not this court, to weigh the probative value of the evidence and to assess the credibility of witnesses. *Id*. at 428.
>
> After reviewing the evidence in light most favorable to the prosecution, the court finds that the evidence was sufficient to convict Defendant of operating or maintaining a methamphetamine laboratory, contrary to MCL 333.7401c. First, the jury could reasonably infer from circumstantial evidence that Defendant owned and/or possessed the duplex apartment and the vehicle where meth lab components were located. Defendant was the only individual located in the residence when the police arrived and conducted a search. Additionally, the vehicle parked outside the residence containing components of a red P methamphetamine lab was registered to Defendant.

> Second, the jury could reasonably infer from the evidence presented at trial that Defendant knew or had reason to know that the duplex apartment and/or the vehicle was to be used as a location for manufacturing methamphetamine.  Defendant was found with a charred pen on his person that was fashioned to be a pipe used for methamphetamine smoking.  Witnesses testified that they found isopropyl heat, a hotplate, Miracle Grow, peroxide, and drain opener in the kitchen of the duplex apartment where Defendant was located.  Furthermore, a SoBe bottle that was filled with an acidic liquid was found in Defendant's bedroom.  Therefore, the evidence was sufficient to convict defendant of operating or maintaining a methamphetamine laboratory beyond a reasonable doubt.

(Kalamazoo Cty. Cir. Ct. Op. & Order, ECF No. 24-11, PageID.1132-1133.)  Although the court of appeals relied on state authorities, the standard it applied is functionally identical to the *Jackson* standard.

The state court rightfully rejected Petitioner's contention that the prosecutor was required to produce direct evidence or physical evidence to support a guilty verdict. "'[C]ircumstantial evidence is entitled to the same weight as direct evidence.'"  *Bechtol v. Prelesnik*, 568 F. App'x 441, 450 (6th Cir. 2014) (quoting *United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993)); *see also Desert Palace, Inc. v. Costa,* 539 U.S. 90, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."); *Morrow v. Tennessee*, 588 F. App'x 415, 421 (6th Cir. 2014) ("[E]ven though the State may not have shown direct evidence of intent, circumstantial evidence is enough."); *Britt v. Howes*, 404 F. App'x 954, 956-57 (6th Cir. 2010) ("'[C]ircumstantial evidence alone is sufficient to sustain a conviction . . . .'").

The state court's conclusion that the jury could reasonably infer from the circumstantial evidence that the prosecutor had established the required elements was also appropriate.  *Jackson* holds that it is the jury's province to draw reasonable inferences from basic facts to ultimate facts.  *Id*, 443 U.S. at 319.  In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from

26

'mere speculation.'" *Id*. at 655.  The Court described a reasonable inference as an inference that a rational jury could make from the facts.  Certainly, the inferences identified by the trial court rationally flow from the underlying facts.  The inferences are not compelled by those facts.  The inferences are not even more likely than not.  They are simply rational.  *Id*. at 656.  To succeed in his challenge Petitioner must show that the identified inferences are irrational.  He has not made, and cannot make, that showing.

   The state court's determination that the jury's verdict was supported by sufficient evidence is neither contrary to, nor an unreasonable application of, *Jackson*.  Therefore, Petitioner is not entitled to habeas relief on his sufficiency challenge.

   VIII. <u>Prosecutorial Misconduct (Habeas Issues III, V, VI, XIII, and XIV)</u>

   Misconduct by a prosecutor can rise to the level of a due process violation.  *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989).  However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993).  The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt.  *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*).  "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'"  *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

Here, Petitioner alleges two distinct types of prosecutorial misconduct.  First, Petitioner accuses the prosecutor of eliciting knowingly false testimony from Deputy Rought. Second, Petitioner claims the prosecutor withheld exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  Each claim is considered below.

### A.    "False" Testimony (Habeas Issues III, V, VI, and part of XIII)

Petitioner argues that the meth pipe and the "Meth Watch" logs are the very foundation of the prosecution's case, yet they are entirely fabricated.  Petitioner also claims that a recording of his neighbor's call to 911 is not consistent with Deputy Rought's account of law enforcement's arrival and the events that followed.

The Supreme Court repeatedly has recognized that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'"  *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.  In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.  The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted).  *See also Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998).  Petitioner bears the burden of demonstrating that the testimony was actually perjured.  *Lochmondy*, 890 F.2d at 822.  "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Id.*

Petitioner's claims fall apart at the first step.  He cannot show that Deputy Rought's testimony regarding the existence of the makeshift meth pipe is false.  Indeed, in Petitioner's trial

testimony, he acknowledged the existence of the meth pipe; he explained he simply found it and picked it up; he admitted Deputy Rought had taken it during the pat-down search; and he acknowledged that he and Deputy Rought had communicated regarding the pipe, its use, and Petitioner's prior use of meth.   (Trial Tr. II, ECF No. 24-5, PageID.730, 757-758.)   Thus, Petitioner's claim regarding the meth pipe is particularly disingenuous.

Petitioner's claim regarding the falsity of Deputy Rought's testimony about the Meth Watch logs is also disingenuous.  Petitioner acknowledged his purchases of allergy medicine containing pseudoephedrine.  (*Id*., PageID.762-764.)  Although the logs at issue were likely not "Meth Watch" logs, but instead NPLEx logs, Petitioner offers no evidence to support a claim that Rought did not consult pseudoephedrine purchase logs as Deputy Rought testified in the probable cause affidavit and at trial.  To the extent Petitioner claims the prosecutor knowingly elicited perjured testimony because Deputy Rought called the logs "Meth Watch" logs and not NPLEx logs, his claim is frivolous.

Petitioner finally claims that Deputy Rought's testimony is demonstrated to be false by the 911 recording.  Neither Petitioner's submissions nor the state court record include the recording or a transcript of it.  The gist of his argument, however, is that the 911 recording lends greater credence to his own testimony than that of Deputy Rought regarding the events that occurred when law enforcement arrived.  There are certainly inconsistencies between the testimony of Petitioner and Rought on that subject.  Indeed, there are inconsistencies between any two of the four accounts provided by Petitioner, Rought, Trooper Lewis, and the neighbor.  Inconsistency, however, is not enough to demonstrate falsity.  Accordingly, Petitioner's claim fails.

## B.    Brady violations (Habeas Issues XIII and part of XIV)

Petitioner argues that the prosecutor violated the Supreme Court's holding in *Brady v. Maryland*, 373 U.S. 83 (1963).   Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  The Supreme Court has held that "[t]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id.* at 281 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009).   A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Bagley*, 473 U.S. at 682.

However, the *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006).  The government's failure to disclose potentially exculpatory evidence does not violate *Brady* "'where the defendant knew or should have known the essential facts that would permit him to take advantage of such information' or where the evidence is available from another source."  *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)).   "[W]here the alleged *Brady* evidence is available to the defense, there is really nothing for the government to disclose."  *Bell v. Bell*, 512 F.3d 223, 235 (6th Cir. 2008) (internal quotations omitted).

30

Petitioner's *Brady* claim centers on two pieces of evidence: the 911 tape and the Kalamazoo County Health Department Post-Decontamination Report. Because Petitioner has not provided the 911 tape, he has failed to carry his burden to demonstrate that the tape is favorable to him. The trial court based its rejection of Petitioner's *Brady* claim regarding the 911 tape on that ground. "Defendant does not establish in his motion . . . how the 911 call is material evidence that supports his claim of innocence." (Kalamazoo Cty. Cir. Ct. Op. & Order, ECF No. 24-11, PageID.1130.) That determination is eminently reasonable on the record.[8]

The trial court concluded Petitioner had also failed to show how the Post-Decontamination Report was favorable to the defense. (*Id*.) As noted above, the report discloses that there was no evidence of methamphetamine at 9035 Douglas Avenue. The report was generated, however, only after that address was subjected to a decontaminating cleaning. The report says nothing about the presence of methamphetamine in the duplex on May 25, 2013. The trial court's determination regarding the report, therefore, is also reasonable on the record.

Petitioner has failed to show that the trial court's rejection of his *Brady* claims is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on those claims.

IX.    Ineffective Assistance of Trial Counsel (Habeas Issues I and VII)

Petitioner's complaints regarding his trial counsel must be measured against the clearly established federal law of *Strickland*: the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient

---

[8] Moreover, the other materials Petitioner has supplied suggest that Petitioner had the tape all along. Petitioner's appellate counsel wrote that he "found the 911 tape." (May, 10, 2016 Corr., ECF No. 4-8, PageID.170.) Under the Michigan Court Rules, Petitioner's trial counsel was required to make available to his appellate counsel "the defendant's file, including all discovery material obtained . . . ." Mich. Ct. R. 6.005(H)(5). If Petitioner's appellate counsel "found" the tape, he likely found it in the file he received from Petitioner's trial counsel. Thus, based on the materials Petitioner has provided, it appears the 911 tape was made available to the defense.

performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 698.  Although the Michigan Court of Appeals relied upon state authorities, it applied the same standard:

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise.  *People v. Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). In order for ineffective assistance of counsel to justify reversal of an otherwise valid conviction, "a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial."  *People v. Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994).

(Mich. Ct. App. Op., ECF No. 24-8, PageID.883.)

## A.    Failure to Subpoena Defense Witnesses

Petitioner first complains that only one witness testified in his defense.  He attributes that limit to counsel's supposed failure to subpoena the other witnesses on his witness list.  The court of appeals rejected that claim:

> "Decisions regarding . . . whether to call or question witnesses are presumed to be matters of trial strategy."  *People v. Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).  The witnesses were listed as potential defense witnesses.  Defendant presented no evidence that his trial counsel failed to evaluate these witnesses' potential testimony.  We will not substitute our judgment for that of defense counsel under these circumstances.  *Id.* at 77.  Further, defendant provides no explanation of how the testimony of the other witnesses would have benefitted his defense.

(*Id.*)

"A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted); s*ee also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what [the witness] would have said.  Speculation cannot suffice to establish the requisite prejudice.")  Because Petitioner cannot demonstrate ineffective assistance absent a showing of prejudice, the appellate court's rejection of this claim is neither contrary to, nor an unreasonable application of, *Strickland*.

32

**B.**    **Failure to Admit the Medical Records or Computer Log**

Petitioner next complains that counsel failed to introduce into evidence his medical record—showing treatment for MRSA, not burns—and his computer log—purportedly indicating that he was on his computer, not rushing about cleaning up some meth lab explosion, after the 911 call.  The court of appeals rejected this claim:

> The jury heard testimony from defendant with respect to both of these pieces of evidence; the evidence would at most have simply corroborated defendant's testimony.  Defendant also presented no evidence regarding the content of the medical records or the computer log in support of his contention that they would contradict aspects of Rought's testimony.  Defendant fails to overcome the presumption that counsel's decision not to present this evidence was sound trial strategy.  See *id.*  Moreover, defendant fails to explain how either piece of evidence would have actually impacted the outcome of his trial.

(Mich. Ct. App. Op., ECF No. 24-8, PageID.883-884.)

As explained above, there was no real dispute regarding the nature of Petitioner's facial injuries.  The law enforcement personnel thought they looked like superficial burns.  In light of the report of an "explosion" that brought them to Petitioner's house, the pictures of Petitioner's face shown to the jury, and Petitioner's own description of the injuries, there is no reason to doubt the testimony that the injuries looked like superficial burns.  On the other hand, there is no reason to doubt Petitioner's testimony that the injuries were actually MRSA sores.

Supporting the MRSA diagnosis with medical records does not change that the sores looked like superficial burns.  Petitioner's guilt or innocence did not hinge on whether his MRSA sores looked like superficial burns, it depended upon whether the equipment and supplies found in his home and vehicle were intended for the manufacture of methamphetamine.  Thus, it does not appear that any prejudice flowed from counsel's decision to not introduce Petitioner's medical records.

33

The court of appeals' conclusion that Petitioner failed to demonstrate prejudice from counsel's decision to forego introduction of the computer log is also reasonable on the record. The computer log purports to explain Petitioner's whereabouts for the 10-minute window between the time Deputy Rought testified he was dispatched and the time he would have arrived at Petitioner's home. That time period, however, was not the delay that troubled Deputy Rought. Deputy Rought became suspicious because of the minutes it took Petitioner to respond to the knocks on his front door after police arrived. Petitioner's computer log does not address that time period.

Moreover, introduction of the computer log would have called into question Petitioner's testimony that he heard the "explosion" while he was working on the computer, walked out the front door, went around the house into his backyard, looked for the source of the explosion and, finding nothing, went back inside and then ten minutes later the police arrived. His log does not reflect computer time, a break, and then computer time. Thus, the computer log neither detracts from Rought's testimony nor bolsters Petitioner's testimony. The events Petitioner described on the stand favored him more than his computer log would have.

## C.    Conflict of Interest

In a 2004 methamphetamine-related prosecution, Petitioner was represented by attorney Jeffrey Getting. Attorney Getting was also the elected prosecuting attorney when Petitioner was prosecuted. Petitioner claims he never waived this conflict of interest and that his trial attorney was constitutionally ineffective for failing to raise the issue.

The court of appeals concluded the prosecutor's earlier representation of Petitioner did not warrant a conflict-of-interest challenge:

> Defendant was previously represented by the current, elected Prosecuting Attorney, Jeffrey Getting, in a 2004 case involving methamphetamine. Defendant fails to

34

provide any indication of how Getting's representation in his 2004 case affected the trial in this case (in which the People were represented by an assistant prosecutor). The cases are unrelated; the only similarity was the involvement of methamphetamine. . . . Because Getting's representation of defendant occurred approximately 10 years before this case in an unrelated matter, counsel was not ineffective for failing to raise a conflict of interest claim.

(Mich. Ct. App. Op., ECF No. 24-8, PageID.884.)

In *Vega v. Johnson*, 149 F.3d 354 (5th Cir. 1998), the Fifth Circuit Court of Appeals

provided a concise and compelling analysis of a similar fact situation:

This is a case of switching sides, but not of doing so in the course of a single litigation matter. In such a case, the ethical duty of loyalty prevents [the prosecutor] from acting against [his former client's] interests. That duty lasted only as long as the litigation matter, however, and then ceased to restrict [the prosecutor's] options. *See, e.g., McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). Once the matter ended, [the prosecutor's] only duty was to protect confidential information he received in his capacity as attorney.

If [the prosecutor] had represented [his former client] in the possession case and then prosecuted him at the trial level here, we would have to ask only whether the matters were substantially related. If so, the potential for abuse of confidential information obtained through the prior representation would be high, and [the former client's] trial likely would be deemed fundamentally unfair . . . . *See Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Because neither this circuit nor the Supreme Court has considered a situation in which a prosecutor formerly represented the defendant, however, even this might require a new rule.

*Vega*, 149 F.3d at 358.

The circuit court's analysis is noteworthy for two reasons: first, it entirely validates the analysis of the Michigan Court of Appeals in Petitioner's case; and second, it recognizes that there is no clearly established law directly on point. Where the prosecutor's prior representation of Petitioner was not substantially related to the present prosecution of Petitioner there is no conflict that might render Petitioner's present trial unfair. Petitioner has failed to demonstrate any substantial relationship between the 2004 and 2013 prosecutions; therefore, his claim of conflict is meritless.

Counsel's failure to raise a meritless issue does not constitute ineffective assistance. *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'").  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Accordingly, Petitioner has failed to demonstrate that the Michigan Court of Appeals' rejection of this ineffective assistance claim is contrary to, or an unreasonable application of, *Strickland*.

### D.    Failure to Raise Fourth Amendment Issues

Although *Stone v. Powell* precludes direct consideration of Petitioner's Fourth Amendment claims on habeas review, the merits of Petitioner's Fourth Amendment challenges become relevant, despite *Stone v. Powell,* because of Petitioner's ineffective assistance of counsel claim.  In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), the Supreme Court stated: "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."  *Id.* at 375.

Petitioner raises multiple Fourth Amendment challenges: (1) he argues the search warrant was not supported by probable cause because Deputy Rought lied about the meth pipe, Petitioner's admissions regarding the meth pipe, and the "Meth Watch" logs; (2) he claims the pre-search warrant entry of Rought, Lewis, and Miller into his home was improper; and (3) he contends the "pat down" search that resulted in the discovery of the meth pipe violated *Terry v. Ohio*.

1.    Probable Cause Affidavit

The Michigan Court of Appeals rejected Petitioner's ineffective assistance claim regarding counsel's failure to challenge the search warrant because counsel challenged the legality of the search warrant.  (Mich. Ct. App. Op., ECF No. 24-8, PageID.884.)  Counsel's challenge was limited to the claim that Deputy Rought had misrepresented the nature of Petitioner's admission regarding the purpose of the meth pipe.  (Mot. Hr'g Tr., ECF No. 24-3.)  Counsel did not address the meth pipe or the "Meth Watch" logs as insufficient to establish probable cause.

Petitioner's contention that the meth pipe and "Meth Watch" logs are insufficient to demonstrate probable cause for a search depends on his claim that the pipe and the logs are "false."  For the reasons set forth above, that claim is unsustainable and Petitioner's claim is disingenuous.  Therefore, Petitioner's ineffective assistance claim fails because he cannot demonstrate that this probable cause challenge presents a meritorious Fourth Amendment issue.

2.    Pre-Search Warrant Entry

The Michigan Court of Appeals flatly rejected Petitioner's claim regarding the pre-search warrant entry into his home:

> The Fourth Amendment of the United States Constitution and the corresponding provision in the Michigan Constitution guarantee the right to be free from unreasonable searches and seizures.  US Const, Am IV; Const 1963, art 1, § 11. Evidence seized during an unconstitutional search is generally barred from introduction at trial.  See *People v. Hawkins*, 468 Mich 488, 498-499; 668 NW2d 602 (2003).  Here, however, all evidence seized from defendant's residence was seized pursuant to a search warrant, the validity of which defendant does not challenge on appeal.  Officers testified that they did not discover or seize any items during their initial walkthrough, nor was the issuance of the search warrant grounded on any observations made by the officers during the walkthrough. Therefore, we need not discuss in detail defendant's arguments concerning whether an exception to the warrant requirement applied to the officers' initial walkthrough.

(Mich. Ct. App. Op., ECF No. 24-8, PageID.886-887.)

The appellate court's determination goes to the second *Kimmelman* requirement: prejudice.  Even if the pre-search warrant entry violated the Fourth Amendment, it did not generate any information or evidence that was used to obtain the search warrant or that was used at trial. Thus, if the entry were a Fourth Amendment violation, the violation would not justify the exclusion of evidence admitted at Petitioner's trial.  Counsel's failure to forego a challenge to that search, therefore, was not unreasonable and did not result in prejudice to Petitioner.

3.    "Pat-Down" Search

The state appellate court concluded that the "pat-down" search did not violate the Fourth Amendment:

> [D]efendant claimed that counsel was ineffective for failing to challenge the pat-down search of defendant on the grounds that it was not performed until 20 minutes after the officers had made initial contact with defendant.  This claim is without merit.  A pat-down search is proper if an officer has reasonable suspicion that the individual to be searched is armed.  *People v. Custer*, 465 Mich 319, 328; 630 NW2d 870 (2001).  To demonstrate reasonable suspicion, "an officer must have specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant the intrusion."  *Id.* (citation and quotation omitted). A pat-down search may be conducted "where nothing in the initial stages of the encounter serves to dispel [the officer's] reasonable fear for his own or others' safety."  *Terry v. Ohio*, 392 US 1, 30 (1968).  Thus, contrary to defendant's argument, the law imposes no time restriction on when an officer may conduct a limited pat-down search if he has the requisite reasonable suspicion that the individual may be armed.  See *Custer*, 465 Mich at 328; *Terry*, 392 US at 30.  Here, the officers were told that Main had heard what she believed to be a gunshot or loud explosion coming from defendant's residence.  Defendant was evasive toward the officers when they arrived.  Therefore, the pat-down search was based on the officers' reasonable suspicion that defendant may have been armed.  Defense counsel was not ineffective for failing to raise this futile challenge.  See *People v. Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

(Mich. Ct. App. Op., ECF No. 24-8, PageID.884.)  The court's analysis is entirely consistent with *Terry*, with regard to permissible pat-down searches, and with *Kimmelman*, with regard to ineffective assistance claims where counsel fails to challenge a search on Fourth Amendment grounds.  Because Petitioner has failed to demonstrate otherwise—that the state court's

determination is contrary to, or an unreasonable application of clearly established federal law—he is not entitled to habeas relief on this claim.

### E.      Failure to Suppress Statements

Petitioner next contends that his counsel rendered ineffective assistance because she did not attempt to suppress the statements he made to officers.  Petitioner claims the statements should have been suppressed because they were made in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  In *Miranda*, 384 U.S. at 436, the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self-incrimination, when an individual is in custody, law enforcement officials must warn the suspect before his interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel.  *Id.* at 478-79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994).

The Michigan Court of Appeals rejected this ineffective assistance claim because the court concluded Petitioner was not "in custody" and, thus, not entitled to *Miranda* warnings:

> [C]onsidering the circumstances surrounding statements defendant made to police during his interaction with them, we find that *Miranda* warnings were not necessary because defendant was not subject to custodial interrogation.  See *People v. Ish*, 252 Mich App 115, 118; 652 NW2d 257 (2002).  Defendant was in his home at the time he made the incriminating statements.  "Interrogation in a suspect's home is usually viewed as noncustodial."  *People v. Coomer*, 245 Mich App 206, 220; 627 NW2d 612 (2001).  "[A] police officer may ask general on-the-scene questions to investigate the facts surrounding the crime without implicating the holding in Miranda."  *Ish*, 252 Mich App at 118.  This conclusion is further supported by the fact that once the officers decided to obtain a search warrant to search defendant's residence, the officers told defendant that he was free to leave (and he in fact did leave).  Therefore, defense counsel was not ineffective for failing to move to

suppress defendant's statements under Miranda because such a motion would have
been futile.  See *Thomas*, 260 Mich App at 457.

(Mich. Ct. App. Op., ECF No. 24-8, PageID.885.)  Petitioner offers no evidence, much less clear

and convincing evidence, to rebut the appellate court's presumptively correct findings regarding

the circumstances under which he made the statements he believes should have been suppressed.

Nor has Petitioner demonstrated that the court of appeals' conclusion—that he was not in custody

under those circumstances—is contrary to, or an unreasonable application of, clearly established

federal law.  Where there is no *Miranda* violation, a motion to suppress Petitioner's statements

would have been, as the court of appeals determined, futile.  Accordingly, Petitioner is not entitled

to habeas relief on this claim.

### F.    Failure to Argue or Emphasize

Petitioner claims that his counsel should have emphasized that the officers did not

smell or see anything during their walk-through to indicate there had been a fire or explosion.  The

appellate court rejected the claim because it concluded Petitioner's counsel raised that in closing

argument.  (*Id*.)  That determination is reasonable on the record (Trial Tr. II, ECF No. 24-5,

PageID.792-795); Petitioner's argument is not.

Petitioner claims that his counsel should have emphasized that Rought testified

inconsistently regarding fingerprints on the garbage bag in Petitioner's vehicle.  At the preliminary

examination, Rought indicated they had tested the bag, but found no fingerprints; at trial he

testified they had not tested the bag.  The appellate court concluded Petitioner's counsel had

emphasized the issue in her questioning of Rought and that no benefit would have come from

additional emphasis.  (Mich. Ct. App. Op., ECF No. 24-8, PageID.885.)  That determination is

reasonable on the record (Trial Tr. I, ECF No. 24-4, PageID.665, 667-668, 670-671).

Rought acknowledged that if he testified at the preliminary examination that they tested the garbage bag, then they tested the garbage bag.  Testing and finding nothing supported counsel's argument better than not testing at all.  She argued "not one of those items [from Petitioner's vehicle] has Mr. Frederick's fingerprints on them anywhere."  (Trial Tr. II, ECF No. 24-5, PageID.798.)  Petitioner has failed to demonstrate that the court of appeals determinations— that Petitioner's counsel performed reasonably and that, in any event, no prejudice resulted—was contrary to, or an unreasonable application of, clearly established federal law.

Petitioner claims that counsel should have focused on the items necessary to manufacture methamphetamine that were not found at Petitioner's residence.  The court of appeals rejected Petitioner's claim because counsel had elicited from Rought testimony regarding items he might have expected to find, but did not (Trial Tr. I, ECF No. 24-4, PageID.665-666, 674), and then counsel highlighted those missing items in her closing argument (Trial Tr. II, ECF No. 24-5, PageID.795-796, 798, 801).  (Mich. Ct. App. Op., ECF No. 24-8, PageID.886.)  Once again, that factual determination is well-supported in the record and the court's further determination that counsel performed reasonably in that regard is consistent with clearly established federal law.

## G.    Miscellaneous Failures

Petitioner complains that counsel also failed to meet with him, conduct discovery, locate the health department report, get a copy of the 911 call, address the Fourth Amendment violations, inform Petitioner of a chambers meeting before the hearing on the motion to suppress, inform Petitioner of a "notice of impeachment," review jury instructions with Petitioner, review with Petitioner the witnesses against him and their expected testimony, preserve the cigarette butts from the garbage bag in the back of his vehicle, preserve the stained white shirt for testing, and interview Petitioner's housemates.  Petitioner presented the last three of these "failures" on direct

appeal.  The court of appeals rejected each because Petitioner had failed to show any prejudice.  (Mich. Ct. App. Op., ECF No. 24-8, PageID.886.)   The remaining "failures" were presented for the first time to the trial court on Petitioner's motion for relief from judgment.  The trial court also rejected each claim because Petitioner did not demonstrate any prejudice.  (Kalamazoo Cty. Cir. Ct. Op. & Order, ECF No. 24-11, PageID.1120-1123.)

Many of these issues have already been addressed on the merits.  Some have not.  The state courts' conclusions that Petitioner has failed to demonstrate any prejudice flowing from these failures is entirely consistent with clearly established federal law.  Petitioner's scattershot complaints about his counsel regarding discovery, chambers meetings, a notice of impeachment, jury instructions, witness testimony reviews, witness interviews, cigarette butts, and stained shirts invite rank speculation that, just maybe, some harm accrued to Petitioner.  The issues he raises, however, are entirely peripheral to the testimony and other evidence that resulted in his conviction:  Petitioner had a cache of meth-making supplies and equipment in his home and vehicle.

Petitioner's failure to provide any evidence regarding prejudice to rebut the state courts' conclusions that he had suffered no prejudice is fatal to his claim.  The state courts' determinations are neither contrary to, nor an unreasonable application of, *Strickland*.  Therefore, Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claims.

X.    Ineffective Assistance of Appellate Counsel

Petitioner finally claims that his appellate counsel rendered ineffective assistance to the extent he failed to raise on direct appeal any of Petitioner's motion for relief from judgment claims.  The trial court, having rejected Petitioner's claims on the merits, concluded that Petitioner fell short on his ineffective assistance of appellate counsel claim as well:

> Defendant has not shown that his appellate counsel was ineffective. . . . [A]ppellate counsel does not need to raise every appellate claim and may be selective as a

> matter of discretion and strategy when choosing which meritorious issues to raise
> on appeal.  *People v. Reed*, 449 Mich 375, 397 (1996). . . . The is no evidence that
> Defendant was denied adequate counsel.  This court cannot deem appellate counsel
> ineffective for failing to raise non-meritorious issues.  Furthermore, Defendant has
> not show that the result of the proceeding would have been different.

(Kalamazoo Cty. Cir. Ct. Op. & Order, ECF No. 24-11, PageID.1133-1134.)  For all of the reasons

discussed above, the state court's determinations regarding the lack of merit in Petitioner's claims

is well-grounded in the record and entirely consistent with clearly established federal law.

Petitioner's appellate counsel was not ineffective for foregoing those meritless claims.  Petitioner

is not entitled to habeas relief.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of

appealability should be granted.  A certificate should issue if Petitioner has demonstrated a

"substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth

Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of

appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district

court must "engage in a reasoned assessment of each claim" to determine whether a certificate is

warranted. *Id.*  Each issue must be considered under the standards set forth by the Supreme Court

in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have

examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to

warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A

petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues

presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537

U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review,

but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Date:  April 8, 2019              /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).